E.D. Cunningham of the Federal Defender's Office on behalf of Mr. Brice. A new trial is required because the government strike of Juror 19 violated Batson and the trial court erroneously precluded McWilliams' confession in this racially charged case. Let's start with the Batson challenge. There was a challenge to one prospective juror, but two minorities remained. Is that correct? Your Honor, only one African-American juror remained who was available in the prospective jury pool. The rest of them, their numbers were too high. Were too high. Okay. Yes, Your Honor. All right. But then we have a factual – well, first of all, I guess the question is, does that establish a Step 1 prima facie Batson violation? But then we have the district court's alternative finding that even if it did, after listening to the prosecutor's explanation for the strike, we have a factual finding that that – that it was not an impermissible basis for the challenge. Yes, Your Honor. Let me address both of those issues. First of all, the prima facie case issue is moot under Hernandez and Cruz-Escoto because once the district court elicits response from the prosecutor and rules on the ultimate issue, there's no longer a need to look at the prima facie case, because once the race – purportedly race-neutral reasons are given, if those reasons actually raise questions of pretext, there's evidence of discrimination in the record that can't be ignored. But the evidence of pretext is what? That one juror of color was stricken, but one remained? No, Your Honor. There are two strong bases to believe these are pretextual. First of all, the prosecutor did not follow up with Juror 19 at all on the issue she said she was concerned about. She said she was most concerned about the fact that this juror's cousin had been murdered, but she didn't ask anything about it. The prosecutor said, you know, she thought maybe this juror was not satisfied, but she didn't ask whether she was satisfied. Also, there were two other jurors, Juror 16 and Juror 39, who didn't know what happened in closer relatives' cases. And Juror 39, there was no arrest made in her own case where she was assaulted. And it's telling also that the prosecutor did follow up with other jurors about other matters, but she didn't follow up with any of these three jurors about any of this to ask how it impacted them or whether they were satisfied. Also, under this Court's precedence in Murray v. Shiro and Green, the closer a relative is to a juror, the more likely there's going to be an impact. So it seems as though those other jurors would have been more impacted. It seems to me that 39 and 16 said that their family members were the victims of robbery, but 19 was the only one who said that their family member or close relative were the murder victims. So it seems to me that the – to leap from that conclusion to one that there's prejudice under Batson would be incomplete. Well, Your Honor, jurors do not need to be identical to be comparable jurors. Miller, L., Kessler, and many of these Court's cases, Green, Castaneus, make that clear. They don't need to be cookie-cutters. That would make Batson inoperable. And here, this was not a murder case. This was a gun possession case. So the fact that there was a murder wasn't critical, and that's not what the prosecutor said was critical. She said she feared that this juror might not be satisfied. But again, the failure to follow up on what she – the prosecutor claimed to be concerned about, combined with the similarities with the other jurors, is very, very strong evidence of pretext. Let's say you're right, okay? The government says it doesn't matter because she was soft-spoken. They followed up with her on the level of her voice. The court asked her to speak up a little bit. And U.S. v. Daley from 1992 says that is a valid reason. Are we able to affirm, even though you may be right on the criminal activity issue, but the government can nevertheless offer a valid reason under Daley? Your Honor, Daley, first of all, there's no discussion of the facts in Daley. In this case, there's nothing that the government could have failed to understand. The court asked the juror to speak up after she uttered one or two words, I'm juror 19, I'm single. Then the court said, better, I can hear you now. So it was cleared up. The record belies that she was hard to understand. Also, there's an indication, I believe it's in ER 141, that there was some sort of problem in this courtroom with hearing jurors in general. The court at the outset said, jurors in the back, you're going to have to stand up. We often have trouble hearing jurors. Also, the prosecutor said that the reason related to the murder was the most important reason. She didn't develop the other reasons very at all. She didn't say anything about them. And again, she could have followed up. If there was something that she failed to understand or couldn't understand, she needed to ask the juror about it. And she didn't explain why these things were connected to jury service. There was no indication. The juror was so soft-spoken that she couldn't deliberate effectively, and the prosecutor did not explain what she meant. We also and also the pretextual reason given as the most important reason undermines the credibility of the other reasons. We also have to consider the context of this trial. In Hernandez v. New York, the Supreme Court said that a prosecutor's motive to discriminate is something that's relevant. And in Hernandez, the prosecutor said, all of my complainants are Hispanic, my witnesses are Hispanic, I don't have any reason to discriminate here, and the court credited  This is a very different situation. Ginsburg-Campbell, this Circuit generally and this judge specifically for not deferring to the finding that's made by the trial court, how can we comply with the Supreme Court's directive in ruling your favor? Well, Your Honor, I believe in those cases, those were AEDPA cases, where this Court's review is doubly deferential. This is on direct review. So even though it's for clear error, it is not nearly as deferential as AEDPA. It's more than that. The Supreme Court has basically said to us there is no substitute for a judge who's actually sitting there and watching voir dire as opposed to appellate judges trying to determine on a cold record what situation was in the courtroom. That, I think, is what Judge Rawlinson is referring to. And I think that applies whether it's an AEDPA case or on direct review. I have two responses to that, Your Honor. First of all, the record is developed here. The judge questioned the jurors on the very matters that the prosecutor claimed to be concerned about, and the prosecutor didn't follow up. Second of all, the district court here in this case did not conduct a sensitive inquiry into all the direct and circumstantial evidence of discrimination. She did not ---- But isn't the trial judge better equipped to know whether or not the juror was speaking too softly or not? We're not in the position to do that. We weren't there, and the trial judge was there. So how can we be expected to second-guess the trial court's determination on that point? Well, the trial judge made no determination on that. The trial judge made no credibility determination, as in Snyder, where the trial judge, Snyder v. Louisiana, where the trial judge made no finding on nervousness. And in fact, the trial judge's ---- the only thing the trial judge said about it indicated that she could hear the juror just fine as soon as she spoke into the microphone or whatever. She said, better, I can hear you now. But the overall credibility ---- I mean, when the district court judge said that there  was credible in terms of the reasoning ---- Well, Snyder teaches that we cannot assume that the district court made a credibility finding when the district court didn't say anything about it. Also, the district court ---- Well, what was the basis of the district court's denial of the Batson motion then? She really didn't say anything, and that's what I'm ---- would like to ---- I would like to explain that. All right. Go ahead. Go ahead, ma'am. The district court just said, I don't find any evidence of discrimination. She didn't consider the failure to follow up. She didn't consider comparative analysis to these other jurors. She didn't ask defense counsel to respond or enlist defense counsel's help. With all due respect to the Court, the Court didn't seem to really understand its obligations under Batson to conduct ---- Well, counsel, I don't think that's ---- this is a very experienced trial judge who served as the presiding judge of the Maricopa County Superior Court before she became a U.S. district judge, in which she served for years. That's not resonating very well with me. But I'm looking at the record where the Court said, the record, this is ER 247, the Court finds there's no evidence that the reason the government struck her was based on her race, which is further supported by the fact that they did not strike the only other African-American female or African-American person that made it to the prospective jury list. And that is juror number 11, who apparently will be seated on the jury. And then she made note of the fact that there was yet a third African-American prospective juror, but her number was too high. Why shouldn't we defer to that finding of fact from the judge who's sitting there looking at all the faces in the courtroom and watching selection? Well, Your Honor, Miller, L., Kessler, and these courts ---- this Court's cases teach that failure to follow up is evidence of discrimination. Striking similar jurors without following up on the question of concern is evidence of jurisdiction of discrimination. So the Court erred in finding that there was no evidence. If there are no further questions on Batson, I'd like to turn to the 804b3 issue. And as an initial matter, the Court's ruling on unavailability was legal error under a de novo standard of review. Under 804a1, a witness is unavailable if he is exempted from testifying about the subject matter of the statement because a privilege applies. That's what happened here. Let's assume that. Yes, Your Honor. What makes the error more than harmless? Your Honor, this was critical evidence in the case. And the evidence was reliable enough to be admitted under 804b3, but certainly under the right to present a defense. Under 804b3, the main issue that the government takes is with the circumstances. But slaughter, under slaughter, the circumstances here actually weigh in favor of reliability because Mr. McWilliams gave a recorded statement to a defense investigator when he knew that it would subject him to criminal liability. Those were the very same circumstances in slaughter, and in slaughter it was a year later, not just a couple of months later. Also, there was really quite a bit of corroboration here. So let me see if I'm getting you straight. You're saying that the error was harmless, but the exclusion of the unavailable witnesses' testimony undermined his constitutional rights pursuant to Chia v. Cambria. Is that essential? Well, Your Honor, I do not believe the 804a1 error was harmless. I believe this was prejudicial. It should have come in under 804b3 and Chia and the right to present as a defense. I want to briefly discuss the corroborating circumstances. Henderson, the Seventh Circuit case, Candoli, the Ninth Circuit case, says that conflicting evidence is for the jury to weigh. That's the Seventh Circuit case. The Court cannot exclude evidence because it doesn't believe witnesses who testify in court. That's for the jury. In this case, Bryce, McWilliams, Daniels, Zelinsky said Bryce didn't have a gun. Jody Daniels said someone threw the gun in the car, which directly corroborates McWilliams. Bryce is right-handed. Moncrief said he drew with his left hand. Also the gun under the car could have been anybody's, in other words. Well, exactly. And it actually fits in more with McWilliams saying he threw the gun in the car and then somebody throwing it out because he was throwing it out. Wasn't there another witness who identified your client as having possessed that gun in and around the apartment complex? Well, that brings me to a very important point, Your Honor. Scott Davis and Kimberly Wilkie, who were the government's main precipitant witnesses, had a very strong bias against Mr. Bryce that was not brought out at trial, because they believed, or Kimberly Wilkie, after Bryce was arrested, alleged that he had shot at her, although, you know, nothing ever came of that and there were credibility problems with that. But that was a huge bias against Mr. Bryce, but the jury was never able to hear about that. And that really underscores the injustice in this case, because the government was able to present unreliable evidence, but Mr. Bryce was not able to present evidence that had significant indicia of reliability. Okay. But what about the male witness who said that he'd seen him carrying the gun around the complex? That's Scott Davis. That's Kimberly Wilkie's boyfriend. And he had credibility problems, and he also So your theory is because he believed that Bryce had shot at his girlfriend, that that may, then that bias would be attributed to him? Well, yes, Your Honor. And also, that's really beside the point, because the credibility of witnesses is for the jury to decide. The jury should have gotten to hear all of the evidence and decided who to believe, as in she had. If your client had taken a shot at, I mean, I No, no, no. You'd want that to come out in front of the jury? No, no, Your Honor. I don't know. No. But they should have been able to hear McWilliams' confession. Certainly, the allegations shouldn't have come in. Well, McWilliams himself was not coming to testify. They wanted to admit his statements through the investigator. Well, yes, because he invoked his Fifth Amendment right, he couldn't testify. Did he invoke his Fifth Amendment right and slaughter the witness took the stand and actually invoked the Fifth Amendment rights in the courtroom? Did that happen in this case? Well, he did it before the judge, and that is enough under Wilmore and many cases that are cited in the brief. There doesn't have to be an on-the-stand invocation. Just telling the judge is enough. And in fact, in the Ninth Circuit under Clinger, a defense counsel cannot make someone invoke on the stand. A defense counsel would have wanted to do that if he could have. And I see that my time is up. I'm sorry.  I don't know if it's outside of the front of the jury, but certainly outside of the hearing of the jury, they could. What I'm really interested in is how was the information conveyed here? How did McWilliams convey his Fifth Amendment privilege to the judge? He came into the court and he was appointed counsel, and the court asked McWilliams and his counsel if he planned to invoke with regard to whether he possessed the gun, and they said yes, and the court said, well, I'll allow you to do that. You're not allowed to make him invoke on the stand, and basically said that the parties could not ask him about anything having to do with his possession of the gun. Roberts. Thank you. Roberts. Okay. Let's hear it from the government. Thank you, Ms. Cunningham. Thank you. May it please the Court, Mark Kucinowicz on behalf of the United States from the District of Arizona. You don't think that the district court didn't commit plain error by excluding McWilliams' statement, do you? Your Honor, I apologize for hesitating. I want to make sure I'm answering the question correctly. Yeah, it was a double negative. It was plain error. She should have admitted McWilliams' statement through the investigator. Your Honor, the case law admittedly isn't clear, but I believe that our alternative justification is supported by the record that there wasn't sufficient corroborating circumstances, and they didn't clearly indicate the trustworthiness. I misspoke, and I apologize. The witness was clearly unavailable pursuant to Ninth Circuit law, and that's plain error. The witness was unavailable as to that statement? Right. But when the witness was testifying? Well, we can get to all that, but I mean, if a witness comes in and takes a Fifth Amendment in front of the judge, and there's a statement out of court that the defendant wants to offer from that witness, that witness is unavailable, and then you have to look at the statement under 804. That's correct, Your Honor. Okay, all right. My hesitation is that I entirely agree with Judge Tallman in his assessment of this district judge's experience. Well, she blew it on this one. I mean, she may know how to pick a jury, but we're going to have to give her a strike for the evidence ruling. Well, on this evidence ruling, it's unclear from the testimony, I believe, that there is some evidence to suggest that, from the record, that the witness was asked questions that contradicted his supposed out-of-court or alleged out-of-court statement. I guess the question for me is, assuming, as Judge Murphy posed the question, that there was plain error here, was it harmless or not? Isn't that the issue we have to decide? Well, I believe that there's the alternative justification for excluding the evidence. I don't think that you have to get to plain error that this Court can uphold. What's the alternative justification? It was an admission against his penal interest, and, yes, it would come in as hearsay through the testimony of the defense investigator, but because it's an admission under our case law, isn't it presumed reliable? It's not presumed reliable unless there are corroborating circumstances that clearly indicate that it's trustworthy. And here, I don't believe that there are corroborating circumstances that indicate that it's trustworthy. Well, it's – but the rule accommodates for that, does it not? The rule says that if a convicted felon admits that he was the one who possessed the firearm, that that is a statement that is sufficiently incriminating that no man would make that statement unless it were true. So what more do you contend the evidence rules require before that statement is deemed to be trustworthy and admissible? Your Honor, under 804b3, there's an A and a B that both need to be satisfied. A is the incriminating statement. And I would contest even that in this situation, but admittedly, it's the weaker side of the argument. Well, in the Ninth Circuit case law, that specifically refutes your argument on that point, is there not? Well, I think that this – I think that the statement to a defense investigator two months after the fact that has all of the indicators of being manufactured, and it really isn't likely to – Well, why can't the jury decide that? I mean, the statement is, it wasn't Bryce who had the gun. That was my gun. That's what they're trying to get in through the investigator. Well, Your Honor, the likelihood that he is going to be charged for a statement made to a defense investigator is very low. What would the government charge him with? Would the government charge him with lying to a defense investigator, or would the government charge him with possession of the gun? When all of the evidence points to the fact that it wasn't his gun. But I guess the question I'm asking for you is, why would a jury be incapable of sorting out who's telling a lie and who's telling the truth, knowing about the background of the declarant, and seeing all the other evidence that was admitted at trial that was inculpatory as to Mr. Bryce to show that this witness was lying to protect his friend? And I think that that goes specifically to the B discussion about the corroborating circumstances. In this case, no evidence and no witness puts the gun in McWilliams' hand. None of the defense witnesses, not even the defendant, said that McWilliams was holding a gun, and the defendant took the stand. All of the prosecution witnesses corroborate the eyewitness testimony. You have just given the jury a very convincing closing argument as to why they should discredit Mr. McWilliams, but I'm still struggling with why it's why the jury doesn't get to hear that and make that credibility assessment. It is a permissible determination for the court to decide if there's a lack of corroborating circumstances that don't clearly indicate the trustworthiness of this statement. But as Mr. Cunningham pointed out, there is testimony, the left hand versus the right hand, the fact that apparently when the police arrived, there were guns that were being thrown everywhere by the various unlicensed pharmaceutical distributors on street corners that the officers had encountered. So, I mean, the jury has to sort all that out, don't they? And the jury did, Your Honor. And convicted Mr. Rice on what looks to me to be a substantial amount of evidence. And the jury didn't find that any of the defense witnesses were credible in the least, because if the jury had believed any juror had believed any one of the defendant or his two gang-affiliated witnesses that he put on, we wouldn't be here today because. So is your answer to Judge Murphy's question, yes, there was plain error, but under harmless analysis, it's harmless beyond a reasonable doubt based on this record? It took me far too long to get there, but yes, Your Honor. I was hoping that we'd hear that answer a little earlier. But if you want to move on to another topic, go right ahead. All right. I just have one final thing on that. The witness, McWilliams, did testify in the trial. Yes, he did. And he took the Fifth Amendment on the statement about the gun. And so it looks like, nevertheless, the jury, to a certain extent, didn't credit the other evidence because they convicted Bryce on the entire record. True? That's true, Your Honor. But McWilliams, when he was on the stand, was asked whether he saw any – whether he saw him throw anything. He said, no, I didn't see him throw anything. There was all this conflict between and among the defense witnesses. There was an entire lack of credibility. All right. Okay. Counsel, assume we disagree with your alternative basis for excluding the evidence. Why was any error harmless? Your Honor, I believe that the direct eyewitness testimony of Detective Moncrief was very strong and persuasive evidence. Admittedly, he has had some problems post-trial. And if that were the only evidence at trial, we would have issues. But his testimony was corroborated not only by the two police officers, police detectives, who were at the scene and heard statements made by the defendant that he has since tried to explain away in very uncredible ways. And he had multiple explanations and conflicting explanations for those. He and the two eyewitnesses also testified that they saw the defendant throw something and that it landed where they expected that it would land. And the gun was retrieved. That gun was the gun that Detective Moncrief said the defendant held. So there was a lot of evidence corroborating Detective Moncrief's eyewitness statement, placing that gun in the defendant's hand. Were you counsel for the government in this case? I was not, Your Honor. But I have had extensive discussions with counsel. And the evidence at trial was significant. And the fact that defendant testified in such an incredible fashion that conflicted with the statements that he made to the officers at the scene and later at the station, his varying explanations for what he threw and when he threw it and why he ran didn't add up. And the jury was able to find the inverse of what he had testified to because he entirely lacked credibility. The people that he put on the stand to testify on his behalf, as I've mentioned, were his fellow gang members. His own explanations of the tattoos that he had signifying his membership in the Westside City Crips gang were further incredible. Both of the fellow witnesses weren't just fellow gang members, but were also convicted felons. There were lots of reasons not to believe their stories, and they couldn't get their story straight either, even though they had months to prepare their stories. Counsel, could you briefly address the Batson issue, particularly defense counsel's argument that no credibility determination was made by the trial court? Your Honor, I believe that that credibility determination was implicit. That the judge, as Judge Tallman has pointed out, at ER 247 said specifically that there was no evidence that the strike was racially motivated. And that was made immediately after the prosecutor gave her reasons for striking the prospective juror. Those reasons are supported by the record. There may be alternative explanations for those, but as you pointed out, Your Honor, the district court was there. The district court heard that this was a soft-spoken juror. The district court had to ask the juror to speak up. That was the only prospective juror who was asked to speak up in my review of the transcript. That's the only one that I found, and I haven't seen any evidence to the contrary from the defendant. I've also, I also entirely agree with Judge Murphy that purse snatching and robbery are different in kind than being a victim of murder. That's a separate inquiry. It didn't cross anyone's mind at the time to compare those jurors. These are all arguments that are brought up for the first time on appeal, and there are very good reasons why the deference is due to the district court. These are credibility determinations that need to be reversed only if it's clearly erroneous. And the judge's determination in this case that there was no evidence to support that the strike was made for racial reasons is far from clearly erroneous. The judge was correct. Unless the Court has any questions on the other issues. Do you have anything further? I do not. Ms. Cunningham, I'll give you a minute on rebuttal. Thank you. I appreciate that, Your Honor. The one point I really want to make is that the jury may have viewed the evidence differently if McWilliams' confession had come in. This was a critical part of Bryce's defense, and the jury was left with wondering, well, if Bryce didn't have the gun, where did it come from? The jury did have questions. The jury asked questions about whether Bryce was right or left-handed, asked questions about inconsistencies in the evidence, but there was a gaping hole in the defense. And it's very similar to Chia, where the jury got to hear the government's theory but didn't get to hear Chia's theory. And the evidence here was actually more reliable than in Chia, because in Chia there was no evidence that corroborated Chia's non-involvement, and Chia still could have been an accomplice whether or not Wang was involved or not. Here, McWilliams' confession exonerates Bryce, and that was a critical hole that needed to be filled. Its self-inculpatory nature is convincing evidence of its reliability. I spoke briefly to Mr. Kokanovich about this, but if the witness Williams talked about things he talked about and stepped down from the stand, and then the government brought in, I forget the investigator's name, Moncrief, or whoever, to testify about the out-of-court statement, the defense investigator, I'm sorry, I mean that would have looked quite bad to the jury, wouldn't it? Well, it's unusual because of the Ninth Circuit rule that you can't invoke on the stand. It would have been perfectly fine if McWilliams could have been asked and invoked. But that's really irrelevant, because McWilliams, what he testified about were not under 804b3. They weren't statements against his interests. That's what his lawyer said. That's what the district court agreed. So that's really irrelevant to the situation here. And also, even if you find, if you have questions about the corroborating circumstances, but you agree on 804a1, unavailability, remand is the appropriate thing to do, because the Court never even got to reliability or corroboration, and there were other things that could have been introduced that would have further corroborated it. Our position is on this lawyer's case, we can't corroborate it. We can't say that it wasn't harmless beyond a reasonable doubt, right? It's a constitutional violation. It's a Sixth Amendment violation. Our position is that there's enough evidence in the record that corroborates it. It should have come in under CHIA. I understand that. But I still think we do a constitutional violation analysis, do we not? Oh, yes. You need to go to 804b3 and the Constitution, I believe. But if you don't think there's enough to require it to come in, then the issue should be remanded because there's additional evidence that could be presented and the Court never even got to corroboration or reliability. You're about 3 minutes over the minute I gave you, but thank you very much. The case just argued is submitted. Thank you both for a very good argument.
judges: Murphy, Tallman, Rawlinson